114 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rajeshkumar Rasiklal PATEL; Sangita Rajesh Patel; Vedant
Patel, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70094.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 17, 1997.
Decided May 15, 1997.
 
 1
 Before: TROTT and NOONAN, Circuit Judges, and MOSKOWITZ,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Rajeshkumar Rasiklal Patel petitions from the affirmation by the Board of Immigration Appeals (the Board) of the oral decision of the Immigration Judge (IJ) denying him asylum and the withholding of deportation. Holding that the IJ failed to consider all the evidence which we believe compels a conclusion that Patel had a well-founded fear of persecution due to his political beliefs and that the Board failed to correct the error, we grant the petition as to eligibility for asylum.
 
 FACTS AND PROCEEDINGS
 
 4
 The IJ found Patel's testimony to be candid and to be credible. According to this testimony the following facts were established:
 
 
 5
 1. In India Patel expressed a strong political opinion, viz., that the present quota system for lower caste applicants to college is wrong and that it certainly should not be increased from 27 percent to 50 percent reserved admission places for the lower castes. Patel declared that college admissions should be based on merit alone. He began to voice this opinion in 1980 and continued to do so as long as he was in India. He was a leader in the Anamat Andolin Viredhi Samiti or Anti-Reservation Committee.
 
 
 6
 2. Following demonstrations organized by this group in 1980 against an increase in the quota, he was arrested and held briefly by the police and then released without charges. In 1985 he was involved in a demonstration, carried out on behalf of this cause, near Mahatma Gandhi's statute near the Income Tax Office. He and 14 others in the leadership were arrested by the police. According to his testimony, "They beat us up ... on our back and on our feet.... They beat us with a baton." The police did not explain the reason for the arrest. In Patel's view it was only because they wanted to shut down the demonstration. The lawyers who were working for Patel's committee provided bail and he was released the next day.
 
 
 7
 3. In the course of these political activities Patel has incurred the political enmity of a powerful politician, Madhavsingh Solanki. Solanki was the principal minister of the state of Gujarat when the demonstrations occurred there in 1985. His government lost power as a result of the demonstrations. At that time Solanki made a statement: "When I will come on power another time, I'll make it sure, and I'll take my revenge." In 1991 Solanki came to office in the national government as foreign minister. He returned to Gujarat to be welcomed. Patel was "the main leader" bringing 100 of his opponents to meet Solanki on his return. The encounter with Solanki was "face to face." Solanki said: "I'll see you. I'm back in power and I'll see you again."
 
 
 8
 4. The new national government continued to pursue the quota policy and began to arrest opponents. Patel's parents advised him to leave the country so he would not be arrested. He did so with his wife and son, entering the United States on November 11, 1991. He filed an asylum application a little over three months later.
 
 
 9
 There is no other evidence in the record. A requested Advisory Opinion from the State Department arrived too late for the hearing and was not referred to by either the IJ or the Board. In the face of Patel's testimony the IJ ruled that Patel "has failed to present specific facts establishing that he has a well-founded fear, that he has actually been the victim of persecution in the past or has a well-founded fear he will be singled out for persecution on account of ... [his] political opinion. Therefore, it must be concluded that he has failed to establish a well-founded fear of persecution within the meaning of Section 208 of the Act." Affirming, the Board said: "We agree with the Immigration Judge that '[t]here is no indication that the government or any faction of the government has any present interest whatsoever in this respondent for his past political beliefs or for his current political stand regarding anti-reservation.' " The Board added that Patel "failed to present evidence to prove that the police were targeting ... [him] on account of his political opinion, and not in response to riots and other illegal activities that these protests resulted in."
 
 ANALYSIS
 
 10
 A foreign national may demonstrate eligibility for asylum by showing past persecution or a well-founded fear of future persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A), quoted in INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987). The test for "well-founded fear" has both subjective and objective components. The asylum-seeker must, first, show a genuine fear of future persecution and, second, demonstrate by "credible, direct, and specific evidence ... facts supporting a reasonable fear of persecution on the relevant ground." Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995) (citation omitted); Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986).
 
 
 11
 The IJ ignored the evidence on the record of future persecution. The IJ did acknowledge that Patel "believes earnestly he will be persecuted." Thus the subjective component was proved. The objective component was established by Patel's testimony as to his two encounters with the powerful politician whose government he had helped to bring down. When, face to face, a politician of such power tells an identified political enemy, who is "the main leader" of a demonstration against him, "I'll see you again", the necessary inference is, "I am going to use my power in the government to exact vengeance upon you." According to Patel, Solanki had already promised revenge in 1985; now, in power again, he repeated the threat in substance to the leaders. Almost anyone in Patel's shoes would have concluded that he had at least a 10 percent chance of persecution from Solanki. Even a 10 percent possibility (far less than probable) of persecution can satisfy the well-founded fear element and qualify for consideration of asylum in this country. Cardoza-Fonseca, 480 U.S. at 440.
 
 
 12
 The Board also failed to consider all of the evidence as to future persecution. The Board's decision was not supported by substantial and probative evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Ghebllawi v. INS, 28 F.3d 83, 85-86 (9th Cir.1994). To prevail before this Court, Patel must show that the evidence compels the conclusion that he has a reasonably founded belief he would be persecuted for his political opinions. The evidence need not show that he actually will be persecuted. It is the reasonable fear of persecution that entitles him to consideration of asylum by the Attorney General. We find the evidence of such a reasonable fear of persecution compelling.
 
 
 13
 There can be a 90 percent likelihood of no persecution and the asylum-seeker still prevails. The requisite quantum of proof shifts as to withholding of deportation. The Attorney General may exercise her discretion as to asylum and consider all the evidence including the Advisory Opinion and whether Patel would today face persecution if he returned to India.
 
 
 14
 The petition is GRANTED; the case is REMANDED to the Board for proceedings consistent with this disposition.
 
 TROTT, Circuit Judge, dissenting:
 
 15
 I respectfully dissent. After carefully reviewing the record, I believe the IJ and the BIA considered all of the evidence in favor of Patel's petition and correctly determined that Patel's allegations are too general and conclusory to establish a well-founded fear of future persecution. As the IJ and the BIA concluded, "[t]here is no indication that the government or any faction of the government has any present interest whatsoever in this respondent for his past political beliefs or for his current political stand regarding anti-reservation." Therefore, I would deny the petition.
 
 
 
 *
 Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3